IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

MICHAEL ADEGOKE,

                    Petitioner,                  OPINION and ORDER

  v.

                                                         15-cr-38-jdp

UNITED STATES OF AMERICA,                    18-cv-815-jdp

                    Respondent.

---

Michael Adegoke has filed a petition under 28 U.S.C. § 2255 to challenge the sentence he received after he pleaded guilty to wire fraud. He contends that his counsel was constitutionally ineffective by failing to raise several issues during sentencing, including that some victims' financial losses should not have been considered because they were not reasonably foreseeable.

Adegoke also filed a separate document that he calls "Request to Take Judicial Notice of Adjudicative Facts" in which he contends that he has "prima facie evidence" that the court lacked subject matter jurisdiction over him. Dkt. 262.[1] I will construe the second document as a supplement to Adegoke's petition. Finally, Adegoke has filed what I construe as a motion to file a late reply brief, No. 18-cv-815-jdp, Dkt. 11, along with the brief.

I will grant the motion to file the late brief, but I will deny Adoegoke's petition and supplement. Adegoke has failed to show that he received ineffective assistance of counsel or that the court lacked jurisdiction over him.

---

[1] Docket entries are to No. 15-cr-38-jdp unless otherwise noted.

BACKGROUND

This case arises out of a conspiracy involving a "romance fraud scheme." Adegoke and other members of the conspiracy—including Sally Iriri, Richard Ugbah, and John Whipple—expressed romantic interest in victims on dating sites, gained the victims' trust, and then defrauded the victims out of money in various ways. In March 2017, Adegoke pleaded guilty to conspiracy to commit wire fraud.

The original presentence report attributed $2.9 million of losses to Adegoke. Dkt. 175, Appx. B. In response to Adegoke's objections to the report, the government conceded that approximately $650,000 should not be attributed to Adegoke. Dkt. 187. An amended presentence report attributed $2.3 million in losses to Adegoke.

At the sentencing hearing, I sustained additional objections to some of the losses attributed to Adegoke and I overruled others. I found that Adegoke was responsible for $1.9 million in losses. As a result, Adegoke's advisory guideline range was 78–97 months. I then considered the factors in 18 U.S.C. § 3553(a) and imposed a sentence to reflect those factors. First, I imposed a 23-month upward departure for impact to the victims, as I had with Iriri. Second, I imposed a 24-month upward variance for Adegoke's greater culpability in the conspiracy as compared to Iriri. Ultimately, I sentenced Adegoke to a term of imprisonment of 144 months.

Adegoke filed a notice of appeal, but the court of appeals later granted his motion to dismiss the appeal.

ANALYSIS

A. **Ineffective assistance**

Adegoke's primary contention is that his counsel provided constitutionally ineffective assistance by failing to object at sentencing to certain victim losses attributed to Adegoke in the presentence report.[2] He also says that counsel failed to investigate and submit mitigating evidence related to Adegoke's role in the offense and his conduct after the offense.[3]

A claim for ineffective assistance has two elements: deficient performance and prejudice. *Brown v. Finnan*, 598 F.3d 416, 422 (7th Cir. 2010). Performance is measured under an objective standard: whether counsel's conduct "fell outside the wide range of competent representation." *Swanson v. United States*, 692 F.3d 708, 714 (7th Cir. 2012). It is not enough to show that counsel "deviated from best practices or most common custom." *Harris v. Thompson*, 698 F.3d 609, 640 (7th Cir. 2012). (internal quotations omitted). And there is a "strong presumption that counsel's conduct falls within the wide range of reasonable

---

[2] In his opening brief, Adegoke also said that his counsel should have conducted more investigation into these issues. But Adegoke did not respond to the government's argument that he is not entitled to relief on this ground because the information he is relying on now was already part of the record and he doesn't identify anything new that further investigation would have uncovered. *See* No. 18-cv-815-jdp, Dkt. 6, at 9–10 (citing *Hardamon v. United States*, 319 F.3d 943 (7th Cir. 2003)). So I will assume that Adegoke is conceding that point. But even if he didn't intend to abandon the argument, I conclude that it is without merit for the reasons stated by the government.

[3] Adegoke also said initially that the court engaged in "double counting" by imposing both a guidelines-based "vulnerable victim enhancement" and a 23-month upward variance for impact to the victims, so his counsel was ineffective for failing to object. But Adegoke didn't respond to the government's argument that there was no double counting because the two enhancements do not cover the same conduct, *see United States v. Salyers,* 160 F.3d 1152, 1163 (7th Cir. 1998), and that the issue was resolved by *United States v. Iriri*, 825 F.3d 351 (7th Cir. 2016), in which the court of appeals affirmed a sentence that applied both enhancements to Iriri, Adegoke's codefendant. Again, I conclude that Adegoke has abandoned the argument, and that, even if he hasn't, the argument is without merit.

professional assistance." *Brady v. Pfister*, 711 F.3d 818, 823 (7th Cir. 2013). To satisfy the prejudice element in the sentencing context, Adegoke must show that there is "a reasonable probability" that he would have received a lighter sentence but for counsel's alleged errors. *Griffin v. Pierce*, 622 F.3d 831, 844 (7th Cir. 2010).

   1. **Reasonable foreseeability**

Under the Sentencing Guidelines, the amount of pecuniary loss resulting from the defendant's crime affects his offense level. *United States v. Sykes*, 774 F.3d 1145, 1149–50 (7th Cir. 2014). Because Adegoke was convicted of a conspiracy, "[t]he loss amount calculation includes losses based not only on the defendant's own actions but also the actions of co-schemers, if those actions were 'within the scope of,' 'in furtherance of,' and 'reasonably foreseeable in connection with' the jointly undertaken criminal activity, and 'occurred during the commission of the offense of conviction, in preparation for that offense, or in the course of attempting to avoid detection or responsibility for that offense.'" *United States v. White*, 883 F.3d 983, 987–88 (7th Cir. 2018) (citations omitted).

The question Adegoke raises is whether his counsel should have argued that certain losses were not "reasonably foreseeable" to Adegoke. Specifically, he says that counsel failed to properly object to approximately $600,000 in losses related to 12 different victims. According to Adegoke, this was prejudicial because subtracting those losses would have changed his base offense level from 16 to 14, changing his advisory guidelines range from 78–97 to 63–78 months.

I am not persuaded that Adegoke was deprived of the right to effective assistance of counsel on this issue. As for deficient performance, counsel *did* raise objections as to losses suffered by 3 of the 12 victims included in Adegoke's petition—PNR, MH, and MM—and on

4

essentially the same grounds that Adegoke is asserting now, *see* Dkt. 184, something that Adegoke ignores in his opening brief. In his reply brief, Adegoke goes into more detail about what he believes counsel should have argued as to PNR, MH, and MM, but these are just quibbles. Counsel's arguments were more than adequate to preserve the objections for appeal, so they were "not outside the wide range of professionally competent assistance." *See Swanson v. United States*, 692 F.3d 708, 715 (7th Cir. 2012) (internal quotations omitted) (no deficient performance when "[t]he written objection (though perhaps not elaborate) was sufficient to raise an argument that the government had not shown that [the defendant's] criminal activity either involved 'five or more participants' or was 'otherwise extensive'").

As for C.B.'s losses, Adegoke says that they were not reasonably foreseeable because they were incurred before he joined the scheme related to her.[4] But he doesn't cite any evidence or even provide specific allegations that would support that conclusory statement and he doesn't identify any reason that his counsel should have known to object on that ground. *Martin v. United States*, 789 F.3d 703, 706 (7th Cir. 2015) (vague and conclusory allegations are not sufficient to support § 2255 petition). And the evidence presented to the court shows that Adegoke was informed of the scamming of C.B. and that Iriri and Ugbah emailed Adegoke about laundering the proceeds (although they ultimately used someone else).

Adegoke's argument about the losses of the remaining eight victims is that counsel should have objected to losses when Adegoke was not the "job owner" (the person communicating with the victim) and the money obtained from the victim wasn't deposited in the accounts of Sally Iriri (a co-defendant and Adegoke's ex-wife) or S.G. (one of the victims).

---

[4] In his opening brief, Adegoke said that he was objecting to approximately $148,000 of C.B.'s losses, but I attributed only $140,000 of C.B.'s losses to Adegoke.

5

But Adegoke is confusing knowledge with foreseeability. A loss may be reasonably foreseeable even if the defendant doesn't know about a coconspirator's actions, doesn't interact with that coconspirator, or even know who the coconspirator is. *United States v. Sykes*, 774 F.3d 1145, 1151 (7th Cir. 2014). Rather, a court can determine reasonable foreseeability based on whether the defendant demonstrated a substantial degree of commitment to the conspiracy's objectives, either through his words or his conduct. *Id.* Adegoke does not acknowledge this standard, let alone develop an argument that the government failed to meet it, so he has not shown that counsel performed deficiently by failing to raise these objections.

Adegoke has failed to show deficient performance, so it would not be necessary to consider prejudice. But Adegoke would fail the prejudice part of the test as well.

A threshold question related to any potential prejudice is which version of the guidelines should apply. This is potentially important because different versions of the guidelines could lead to different results. The government says that the 2013 version should apply because that is the version that was in effect when Adegoke committed the crime. Under that version, any loss between $1 million and $2.5 million results in a 16-level increase. U.S.S.G. § 2B1.1(I) (2013 ed.). Adegoke says that the 2016 version should apply because that was the version in effect when he was sentenced. Under that version, a loss of $1.5 million to $3.5 million results in a 16-level increase; a loss of $550,000 to $1.5 million results in a 14-level increase. U.S.S.G. § 2B1.1(I) (2016 ed).

I found that $1.9 million in losses could be attributed to Adegoke, which results in a 16-level increase under both versions of the guidelines. But if Adegoke is correct that the 2016 version should apply and that $600,000 in losses were inaccurately attributed to him, that

would bump him down to a lower offense level and change his guidelines range from 78–97 months to 63–78 months.

In support of its argument that the 2013 guidelines should apply, the government relies on the presentence report, which used that version of the guidelines. Dkt. 194, ¶ 119. Neither side objected to that conclusion, so I assumed that the 2013 guidelines applied as well. *See* Dkt. 239, at 23–24. But that assumption may have been incorrect. Under § 1B1.11, the court should apply the version of the guidelines in effect at the time of sentencing unless doing so would violate the Ex Post Facto Clause. Because the 2016 guidelines are more favorable to Adegoke, at least in this respect, § 1B1.11 would seem to direct the court to apply the 2016 guidelines. But counsel did not object to that portion of the sentencing report and Adegoke does not contend that counsel's failure to object qualifies as ineffective assistance, so the issue may be forfeited.

I need not decide which version applies because, even under the 2016 guidelines, Adegoke would not fall into a different guidelines range unless he showed that he was entitled to more than $400,000 in reductions to the loss calculation. For the reasons discussed above, Adegoke hasn't made that showing. And even if he had, he still would not be able to show prejudice. As an initial matter, the presentence report states that the losses it calculated "reflect only some of the money" lost by Adegoke's victims, Dkt. 194, ¶ 37, so the probation office's estimates were likely conservative. The guidelines require only a "reasonable estimate of the loss," U.S.S.G. § 2B1.1 cmt. n.3(C), so challenges to individual amounts would have made little difference. *See Sullivan v. United States*, 877 F.3d 337, 342–43 (7th Cir. 2017) (counsel's failure to object to loss amounts not ineffective assistance of counsel when petitioner did not show that judge's estimate was unreasonable).

7

More important, I made it clear at the sentencing hearing that the precise amount of the loss involved and the range recommended by the guidelines were not dispositive in determining Adegoke's sentence. Dkt. 239, at 43. Rather, I varied from the guidelines because I did not believe that a sentence within the recommended range was adequate to serve the purposes of sentencing identified in 18 U.S.C. § 3553(a). Dkt. 239, at 54, 58. That would not have changed if the recommended range had been even lower than I thought it was. *See Emezuo v. United States*, 357 F.3d 703, 711 (7th Cir. 2004) (error in calculating guideline range doesn't require resentencing if "the error did not affect the district court's selection of a particular sentence").

Adegoke has shown neither that his counsel performed deficiently by failing to raise additional objections nor that he was prejudice by counsel's performance. So he is not entitled to relief on this ground.

### 2. Other alleged errors

Adegoke says that his counsel was ineffective for failing to investigate and raise two other issues: (1) Adegoke's relatively limited role in the conspiracy compared to Iriri; and (2) Adegoke's post-offense conduct showing his efforts to rehabilitate himself. Neither of these issues require extensive discussion.

As for Adegoke's role in the offense, Adegoke's counsel did object to a two-level increase for an aggravating role, for essentially the same reasons that Adegoke is raising now. Dkt. 184 and Dkt. 209. Adegoke makes conclusory assertions in his petition that the record shows that Iriri is more culpable than he is, but he does not point to any evidence that was not already before the court and he has not shown that counsel failed to preserve the objection for appeal. So Adegoke hasn't shown deficient performance on this issue.

As for Adegoke's conduct after the offense, both Adegoke and his counsel discussed Adegoke's efforts to better himself through education while he has been incarcerated. Dkt. 209-1 and Dkt. 239, at 47. But Adegoke says that his counsel should have presented evidence about Adegoke's involvement in the "entertainment business" while he was living in Atlanta. Dkt. 260, at 26. He says that such evidence would show that he is not likely to continue illegal activities after his release from prison.

Adegoke doesn't explain why *he* did not provide this information to the court in either his written or oral statements before sentencing if he believed it was important. Regardless, the information is not meaningfully different from the evidence already in the record. The presentence report established that Adegoke was capable of making money through legitimate means. It described his work as a club promoter, operator of a clothing store, and owner of a barber shop. Dkt. 194, ¶¶ 146, 159. It also referred to his attempt to establish a production company and his songwriting in Atlanta. *Id.*, ¶ 158. Additional detail about Adegoke's professional life would not have been helpful to the court. Adegoke's activities in Atlanta show that he is interested in making money, but they say little about whether Adegoke will continue criminal activity in the future. The record shows that he can pursue legitimate and illegal business opportunities at the same time. He doesn't point to any events in Atlanta showing that he was trying to make amends for his past wrongs or that he was committed to making a change. In fact, as I noted at the sentencing hearing, Adegoke continued his relationship with Ugbah in Atlanta, even after Iriri was arrested. Dkt. 239, at 58.

The bottom line is that counsel made some of the objections that Adegoke is raising now and his failure to raise others did not prejudice Adegoke. So Adegoke hasn't shown that he received ineffective assistance of counsel.

## B. Request to take judicial notice

Adegoke says that the court should hold an evidentiary hearing to determine whether the Assistant U.S. Attorney in this case "was not properly authorized pursuant to the Appointments Clause to represent the United States." Dkt. 262, at 3. If she wasn't, Adegoke believes that "the United States was not a party to the case," and the court lacked jurisdiction over him. *Id.* at 3–4.

Adegoke emphasizes at the beginning of the document that he is "not seeking relief yet," so he does not want the document construed as a petition under § 2255 or § 2241 or a motion under Rule 60. But if Adegoke is not seeking relief, then I cannot rule on his motion. Federal courts cannot issue advisory opinions. *Deveraux v. City of Chicago*, 14 F.3d 328, 330 (7th Cir. 1994). Presumably, Adegoke wants to ask the court to vacate his conviction, but he is concerned about violating § 2255(h), which prohibits "second or successive" petitions unless they are authorized by the court of appeals. *See Hare v. U.S.*, 688 F.3d 878, 880 (7th Cir. 2012). But "a proposal to amend one's first motion is not a 'second' motion, at least when the first has not yet reached a final decision" *Vitrano v. U.S.*, 643 F.3d 229, 233–34 (7th Cir. 2011) (internal quotations omitted). Because I had not ruled on Adegoke's § 2555 petition at the time he file his "request to take judicial notice," I will construe the request as a supplement to his petition.

This doesn't get Adegoke very far because his request is frivolous for multiple reasons. First, Adegoke provides no basis for inferring that the Assistant U.S. Attorney was not properly appointed. In fact, the response to his Freedom of Information Act request includes the attorney's oath of office. Dkt. 262-2. Second, even if the Assistant U.S. Attorney had *not* been properly appointed, it would not affect the jurisdiction of the court. *See United States v. Suescun*,

237 F.3d 1284, 1287–88 (11th Cir. 2001) ("An appointment of a United States Attorney that is not made as provided by the Appointments Clause does not affect the Government's power to prosecute.").

## C. Certificate of appealability

Under Rule 11 of the Rules Governing Section 2255 Proceedings, the court must issue or deny a certificate of appealability when entering a final order. To obtain a certificate of appealability, the applicant must make a "substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *Tennard v. Dretke*, 542 U.S. 274, 282 (2004). This means that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (internal quotations and citations omitted). Although the rule allows a court to ask the parties to submit arguments on whether a certificate should issue, it is not necessary to do so in this case. For the reasons already stated, I conclude that Adegoke's motion under 28 U.S.C. § 2255 is without merit. Because reasonable jurists would not debate whether a different result was required, no certificate of appealability will issue.

ORDER

IT IS ORDERED that:

1. Petitioner Michael Adegoke's "motion to expand the record," which I construe as a motion for leave to file an untimely reply brief, is GRANTED.

2. Adegoke's petition under 28 U.S.C. § 2255 and "request to take judicial notice" are DENIED.

3. Adegoke is DENIED a certificate of appealability. He may seek a certificate from the court of appeals under Fed. R. App. P. 22.

Entered March 20, 2019.

BY THE COURT:

/s/

_____
JAMES D. PETERSON
District Judge